# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **TERESA HALE,** | ) |
| Plaintiff, | ) Case No. 1:09CV00014 |
| v. | ) **OPINION AND ORDER** |
| **DOLGENCORP, INC.,** | ) By: James P. Jones |
| | ) Chief United States District Judge |
| Defendant. | ) |

*C. Lance Gould, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, Alabama, and D. Jeffrey Coale, Jeff Coale, PLC, Abingdon, Virginia, for Plaintiff; Joel S. Allen, Morgan, Lewis & Bockius LLP, Dallas, Texas, for Defendant.*

The question in this Fair Labor Standards Act case is whether the defendant employer is entitled to claim the executive exemption to the overtime pay requirement. As to this employee, I find that genuine issues of material fact exist and the defendant's Motion for Summary Judgment must be denied.

I

The plaintiff, Teresa Hale, is a former employee of the defendant, Dolgencorp, Inc., the operator of Dollar General stores.[1] Hale is one of many individual

---

[1] For convenience, the defendant will be referred to as "Dollar General."

employees across the country, including 17 in this district, who have sued Dollar General seeking overtime pay on the ground that they did not fall within the executive exemption of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. §§ 201-219 (West 1998 & Supp. 2010).

After discovery in this case and in the related cases, Dollar General has moved for summary judgment, contending that the facts show as a matter of law that Hale was not entitled to overtime pay, because her job duties met the test of the executive exemption. The issues have been briefed and argued, and are ripe for decision.[2]

II

The court should grant a motion for summary judgment when "the pleadings, the discovery and disclosure material on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477

---

[2] In accord with a Joint Stipulation filed in a companion case, No. 1:09CV00002, the parties filed so-called "common briefs" containing material common to all of the individual plaintiffs in this court, as well as "individual briefs" containing material relevant to the particular plaintiff. In addition, each side was permitted to file a "common submission of evidence" applicable to all of the plaintiffs. Dollar General filed a Motion to Strike/Objection to Certain Evidence Offered in Support of Plaintiff's Response, which evidence was attached to Plaintiff's Common Response. I have not considered this evidence in ruling on the Motion for Summary Judgment and accordingly I will deny Dollar General's motion as moot. I make no decision at this time as to admissibility at trial of this evidence.

U.S. 317, 322 (1986). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A scintilla of evidence that supports the non-moving party's position will not constitute a genuine question of fact. But if there is evidence upon which a reasonable person could find for the non-moving party, then a genuine question of fact exists. *Id.* at 249-50, 252. When considering a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 237 n.2 (1989).

The FLSA requires employers to pay time and a half to employees who work more than forty hours a week unless the employee falls under one of the law's exemptions. 29 U.S.C.A. § 207(a)(1). The executive exemption to the FLSA provides that firms employing individuals as executives or managers are exempt from overtime requirements. 29 U.S.C.A. § 213(a)(1). The executive exemption is an affirmative defense and the party asserting it must prove it applies by clear and convincing evidence. *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993). FLSA exemptions are narrowly construed against the party asserting them. *Haines v. S. Retailers, Inc.*, 939 F. Supp. 441, 445 (E.D. Va. 1996).

The Department of Labor interpreted the FLSA's executive exemption in 29 C.F.R. § 541 (2003).[3] The regulations offer a short and long test as to whether an employee is exempt from overtime requirements. The short test may be used if the employee is: (1) "compensated on a salary basis at a rate of not less than $250 per week," (2) their primary duty is "management of the enterprise in which the employee is employed . . ." and, (3) the employee's work "includes the customary and regular direction of the work of two or more other employees." 29 C.F.R. § 541.1 (2003). Frequently, as in this case, the disputed issue is whether the employee's primary duty was management.

Under the regulations, examples of the management function include:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their statues; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and

---

[3] In August 2004, the regulations were changed from a three-factor short test to a four-factor test. 29 C.F.R. § 541.100(a) (2010). Because Hale left Dollar General in 2003, the old regulations apply to her case.

supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102(b) (2003).

To determine whether an employee's "primary duty" is management, the court must evaluate the facts of an individual case in light of five factors. These factors are: (1) "the amount of time spent in performance of managerial duties"; (2) "the relative importance of the managerial duties as compared with other types of duties," (3) "the frequency with which the employee exercises discretionary powers"; (4) "his relative freedom from supervision"; and (5) the relationship between the employee's "salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor." 29 C.F.R. § 541.103 (2003); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008); *Jones v. Va. Oil Co., Inc.*, 69 F. App'x 633, 636-37 (4th Cir. July 23, 2003) (unpublished).

The first factor, time spent in performance of management tasks, is an important factor. Generally, courts will find an employee's primary duty is management if the employee spends more than fifty percent of her time supervising others or performing management tasks. 29 C.F.R. §§ 541.106, 541.700 (2003). Courts have held that the nature of the primary-duty inquiry is "fact-intensive" and

requires analysis on a case-by-case basis. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008).

III

The facts in this case, which I must view at this point in the light most favorable to the plaintiff, show as follows.

Dollar General operates a chain of discount retail stores located around the country. Hale was hired as a full-time clerk in one of the stores in 1996. Initially, she earned $4.75 per hour and worked as a clerk until January 1997, when she was promoted to a position known as "third key." A third key worker is a clerk who can open and close the store, and may take deposits to the bank. A year later, in 1998, Hale was promoted to assistant store manager. During this period she transferred from her original store to several different Dollar General stores in Southwest Virginia. With each promotion Hale also received a pay raise. She was promoted to the position of store manager in November 1999, and she worked in this position until July 2003, when she left the company for a new job.

During her tenure as a store manager, Hale was paid a weekly salary and she was eligible for bonuses based upon her store's profitability. In the four years that she managed a store, Hale received one bonus for $1,182.02. Her salary as a manager

ranged from $313 per week to $431 per week. As a manager Hale estimated that she averaged between sixty to seventy hours of work per week. In her management position, Hale was not required to punch a time clock and the company did not pay her overtime.

The parties in this case agree that Hale made more than $250 and her work included the regular direction of two or more employees. The central issue thus is whether Hale's primary duty consisted of management

Contrary to the defendant's assertion, it is not particularly helpful to compare Hale's situation to that of other discount store managers, such as the one described in *Grace v. Family Dollar Stores Inc.*, No. 3:08 MD 1932, 2009 WL 2045784 (W.D.N.C. July 9, 2009). The question here centers upon the facts of Hale's employment. I must, therefore, perform a fact-intensive inquiry as to each prong of the five-factor test as applied to Hale in order to determine whether the management issue can be decided as a matter of law.

Although the plaintiff's estimate of time spent on managerial tasks is important, it has been held that "'when non-management duties are performed simultaneously to the supervision of employees or other management tasks" this supports a finding "'that the employee's primary duty is managerial.'" *Jones,* 69 F.

App'x at 637 (quoting *Horne v. Crown Cent. Petroleum, Inc.*, 775 F. Supp. 189, 190 (D.S.C. 1991)).

Hale stated she spent ten percent of her time, about six hours each week, performing management duties such as ordering supplies and scheduling workers. The remainder of her time was spent performing menial labor: cleaning restrooms, scrubbing floors, checking out customers, and stocking shelves.

Hale's district manager determined how many labor hours each store was allotted. As a store manager, Hale was responsible for scheduling employees according to the district manager's allotment of labor hours. Hale's primary concern was making certain she had enough staff to unload supply trucks and place merchandise on the store floors on "truck day." (Hale Dep. 274.) Dollar General required stores to place stock on the floor within twenty-four hours of a supply truck's arrival. The store referred to this as their "door-to-store in 24" strategy. (Hale Dep. 278.) Hale would save her staff's hours for truck day so merchandise could be placed in the store within twenty-four hours. During the rest of the week, Hale had to run the store with a skeleton crew.

To save labor hours for truck day, Hale worked alone in the store for about four hours every day during her ten-hour shift. During this time she manned the cash register, which could not be left unattended. When staff was in the store with her,

Hale would have the other individual man the register while she stocked merchandise on shelves according to the company's "Plan-O-Grams." A Plan-O-Gram was a chart that instructed employees where to place specific merchandise within a store. Typically, ninety percent of Hale's store was organized according to the Plan-O-Gram, with the remaining ten percent stocked according to rules prescribed by Dollar General and Hale's discretion. (Hale Dep. 125-128.)

In response to questions from defense counsel in her deposition, Hale admitted that she was always thinking about how to manage her store even when she performed menial labor such as stocking shelves or cleaning. (Hale Dep. 205-207.) Hale's answer, however, did not indicate that she actively managed the store while performing menial labor. Rather, she performed menial tasks and at the same time she pondered ways to clean the store or organize merchandise.

The defendant argues that a reasonable jury "could only" conclude that these facts demonstrate Hale's primary duty was management. (Def.'s Individual Reply Br. 6.) But, in fact, a reasonable juror could reach the opposite conclusion. Based upon these facts, a juror could decide that Hale spent very little time managing the store. Hale spent forty percent of her time alone in the store, during which she supervised no one and she performed tasks typically done by a clerk. A juror could conclude that her mental management of the store, such as spotting empty shelves while performing

menial labor, did not constitute management or supervision of others. Further, a reasonable juror could determine that the company's strict policies and stringent allocation of staff labor hours resulted in Hale forgoing true management duties in order to perform menial tasks so the store could simply remain open. Thus, a genuine issue of material fact exists as to whether Hale's primary duty was management, or, whether Hale essentially performed a clerk's duties under a different title and pay scale.

Dollar General argues that it principally valued Hale's management abilities. This is evidenced, the defendant asserts, by the fact that Hale had to take a test to become a manager and that Hale's district manager transferred Hale to two different locations to "rescue" the troubled stores. (*Id.*) Further evidence of the store's emphasis on Hale's management duties was Hale's salary — she earned more than any other employee in the store — and the fact that she could receive a bonus based upon the profitability of her store. The defendant also notes that Hale was subject to very little supervision because the district manager only visited Hale's location once every few months for twenty to thirty minutes. The company asserts that this shows that it trusted Hale's management abilities and that she was the individual responsible for the store's overall performance.

Although Dollar General asserts that these facts indicate Hale's management duties were the most important tasks that she performed, a reasonable juror could reach a different conclusion.

Hale's deposition testimony emphasizes that she spent a significant amount of time alone in the store manning the cash register. Further, the company frequently sent Hale to a store in nearby West Virginia where she spent the day stocking shelves. While Hale testified that her district manager, Judy Spangler, never interfered with her ability to perform her duties, a possible reason for this was that Spangler did not have enough time to frequently visit Hale's store or to spontaneously review Hale's work. As Hale testified, Spangler served as the district manager for twenty to thirty stores within in a 200-mile radius. In addition, Spangler worked from an office located three hours away from Hale's store. Hale testified that Spangler left frequent voice mails for her, which included detailed instructions on running the store. Under Dollar General's policies, the company expected store managers to immediately report issues to district managers, which Hale did. The company's policies did not instruct store managers to wait for a district supervisor's visit to discuss issues or problems.

Based upon these facts, a reasonable juror could conclude that Dollar General valued Hale's ability to quickly stock shelves, man a cash register, and serve as an

employee who promptly informed her superior about problems. Hale's testimony could lead a juror to conclude that what Dollar General truly valued was Hale's unquestionable compliance with company rules and her ability to promptly report problems to a supervisor who could then decide how to proceed.

As a store manager, Hale interviewed and recommended candidates for hiring, trained employees, conducted employee performance evaluations, created employees' work schedules, and recommended employees for raises, promotions and terminations. While Dollar General permitted Hale to perform these tasks, she did so under rules that a reasonable juror could interpret as severely limiting the frequency with which Hale truly exercised discretion.

Although Hale created work schedules, she had no control over the amount of labor hours allotted to the store. Given the company's emphasis on its "door-to- store in 24" policy, Hale had almost no discretion with scheduling staff because her primary focus was to make sure she had enough staff for truck day. Hale was unable to discipline or terminate employees unless the district manager directed her to do so. While Hale could recommend that employees receive raises or promotions, the district manager decided whether to adopt such recommendations. Further, the company's standard operating procedures dictated, with step-by-step directions, how

Hale should respond to numerous issues, such as angry customers, answering the phone, and store operations during possible weather emergencies.

Hale testified that the true amount of discretion she exercised depended upon the specific task at hand. When it came to general staff issues on a day-to-day basis, things were "pretty open." (Hale Dep. 280.) But, when she made decisions about inventory, procedures, and stocking shelves, Hale "didn't feel like [she] had that much discretion. . . ." (*Id.*)

Dollar General argues that Hale had the discretion to manage inventory and to mark down items, but Hale testified that she never discounted an item unless she had express permission from her district manager. The defense asserts that Hale had discretion as to what she placed within the "flex-space" that constituted ten percent of the store's floor area. But, even within this space, Hale had to adhere to company policies such as placing related items near one another.

Given these facts, it would be rational for a juror to conclude that in reality, the company's policies left little for Hale to decide and therefore, she did not frequently exercise her discretion.

Hale testified that Spangler, the district manager, spent relatively little time inside Hale's store. Hale testified that Spangler was in the store for eight to ten hours

during inventory visits. Outside of inventory days, Spangler was in the store for about twenty minutes every two to three months.

Clearly, the record demonstrates that Hale had little face-to-face contact with her supervisor. This factor weighs in favor of the exemption. But the record does not show that Hale was genuinely free from supervision. Rather, Hale's testimony indicates that she knew she did not have the freedom to make unfettered decisions about employee pay, promotions, terminations, or punishment. Further, Hale was constantly reminded by Spangler's frequent voice mails or in-store visits that she had to closely adhere to Dollar General's rules regarding placement of merchandise, store cleanliness, and other customer relations policies such as greeting customers within ten feet of entry.

Viewing the evidence at this stage most favorably to Hale, it appears that her decisions about merchandise and store procedures were dictated by company policies, from which she could not deviate. So while Spangler did not personally supervise Hale on a day-to-day basis, Hale had little freedom from the supervisory rules and regulations outlined in Dollar General's corporate publications and ultimately enforced by Spangler.

Hale testified that on average, she worked sixty to seventy hours. Prior to her departure from Dollar General, Hale earned $431 per week. When she started as a

manager, her pay was $313 per hour. Converted to an hourly rate, Hale's salary ranged from $4.47 to $5.21 when she began as a manager, and between $6.16 and $7.19 per hour when she left the company. The actual hourly rate depends upon whether Hale's salary is based upon her minimum work week, sixty hours, or the higher end of her average work week, seventy hours.

During the time Hale worked as a manager, the federal minimum wage was $5.15. When Hale left the company in 2003, the lowest paid clerk earned $5.60 per hour. (Hale Dep. 112).[4] At that same time, assistant managers earned about $7 per hour.

Hale was also eligible for bonuses and during her tenure as a manager she received one for $1,182. The bonus paid to Hale weighs against a finding that Hale's salary was similar, or close to, the salary of an hourly worker because Hale earned a ten percent bonus based upon the store's profit while the remainder of the profit was pro-rated among lower-paid employees.

The analysis of Hale's salary, however, when converted to an hourly rate, weighs toward a finding that Hale essentially earned the same as a clerk. For example, had a clerk earning $5.60 per hour, the lowest paid salary in Hale's store,

---

[4] From Hale's deposition it is unclear how much clerks were paid when Hale started as a manager. Defense counsel represented during Hale's deposition that when Hale earned $423 per week, toward the end of her tenure, clerks earned between $5.35 and $5.75 an hour.

worked a sixty-hour week, she would have earned $224 for the first forty hours, and time and a half, or $168, for the next twenty hours. If this clerk worked a sixty-hour week she would earn $392 to Hale's $431. If the same clerk worked seventy hours, she would earn $476 to Hale's salary of $431. Thus, only when Hale worked a sixty-hour week would she earn slightly more than an hourly employee. Given these facts, a reasonable juror could determine that this factor weighs in favor of Hale and demonstrates that her primary duty was not management.

IV

Whether Hale's primary duty consisted of management is a question which must be answered by a jury. Based upon the applicable five-prong test, a reasonable juror could determine that Hale's primary duty was not management. Thus, summary judgment in favor of the defendant is inappropriate.

The defendant also asserts that summary judgment is appropriate as to Hale's claim that Dollar General acted willfully, which effects the questions of liquidated damages and the statute of limitations. However, as with the management issue, I find that the question of wilfulness also involves a genuine issue of material fact.

For these reasons, it is **ORDERED** that the Motion to Strike (DE 41) and the Motion for Summary Judgment (DE 30) are DENIED.

ENTER: June 23, 2010

/s/ JAMES P. JONES
Chief United States District Judge